**SO ORDERED.**

**SIGNED this 16 day of June, 2009.**

_____
**JAMES D. WALKER, JR.
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | CASE NO. 08-52156-JDW |
| EDITH E. STALNAKER, | ) | |
| | ) | |
| DEBTOR. | ) | |
| | ) | |
| WILDA E. KARL, | ) | ADVERSARY PROCEEDING |
| | ) | NO. 08-5092-JDW |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| EDITH E. STALNAKER, | ) | |
| | ) | |
| DEFENDANT. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

<u>COUNSEL</u>

For Plaintiff:     John R. B. Long
                   237 Davis Road
                   August, Georgia 30907

For Defendant:     Renate Downs Moody
                   152 New Street, Suite 109-112
                   Macon, Georgia 31201

**MEMORANDUM OPINION**

This matter comes before the Court on Plaintiff's complaint to determine dischargeability of a debt and motion for summary judgment. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(I). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

**Undisputed Facts**

Plaintiff Wilda Karl and Defendant-Debtor Edith Stalnaker are sisters. They are two of six siblings. Their father executed a will that devised his estate equally among his six children. Before his death, Debtor prevailed upon him to execute a new will that excluded Plaintiff, and only Plaintiff, from the bequest to his children. Plaintiff challenged the will and sued Debtor in state court in West Virginia, for, among other things, tortious interference with a bequest.

The West Virginia court found the new will was void because Debtor had failed to prove its validity. In a separate proceeding, a jury ruled in favor of Plaintiff on the tort claim, awarding compensatory damages of $14,233.33 and punitive damages of $10,000, plus pre- and post-judgement interest at a rate of 10 percent. Through a post-trial motion, Plaintiff sought and was awarded attorney fees of $21,836.31. The final judgment was domesticated in Jones County, Georgia. As of July 7, 2008, it amounted to $48,063.62, including interest.

The only record provided by Plaintiff as to the results of the tortious interference proceeding is an order entered by the trial court on post-trial motions.[1] Plaintiff provided no

---

[1] Other documents Plaintiff submitted from the state court proceeding include: the complaint and amended complaint, the answer, Plaintiff's pretrial memorandum, a transcript of

record of the proceeding itself, jury instructions, or jury verdict. The order on post-trial motions provided in relevant part as follows:

> This Court has previously conducted a jury trial in which the jury returned a verdict in favor of the Plaintiff and awarded compensatory damages in the total amount of $14,233.33 and punitive damages in the amount of $10,000. The jury further found that the Defendant, Edith Stalnaker tortiously interfered with the Plaintiff's testamentary request [sic].
> ...
> As to the Plaintiff's Motion for Attorney Fees, the Court after hearing arguments of counsel and having heard all the evidence in this case, does hereby conclude that the conduct of the Defendant, Edith Stalnaker in tortiously interfering with the Last Will and Testament of Basil Gandee rose to the level of outrageous conduct and as exemplified by the jury's verdict constitutes bad faith and vexatious conduct on the part of Edith Stalnaker and gives rise to the exception to the normal rule that all parties pay their own attorney fees. The Court does therefore conclude that the Defendant, Edith Stalnaker's conduct in this matter was in bad faith, willful, wanton, and vexatious and therefore does award Plaintiff attorney fees and costs[.]

(Plaintiff's motion for summary judgment, ex. A.)

The trial court's order on post-trial motions was entered on August 30, 2006. Approximately two years later, on August 8, 2008, Debtor filed a Chapter 7 petition. Shortly thereafter, Plaintiff filed a complaint to determine the dischargeability of the debt related to the tortious interference claim, pursuant to 11 U.S.C. § 523(a)(4) and (a)(6). In paragraph 12 of her complaint, Plaintiff alleged the debt was nondischargable. Debtor admitted paragraph 12 in her answer. Similarly, when Plaintiff filed a subsequent motion for summary judgment, she included

---

Debtor's deposition, a doctor's affidavit as to the state of mind of the testator, an order to show cause requiring Debtor to appear at a hearing and answer for her failure to turn over property of the probate estate to the new executor and failure to provide an accounting of her activities related to the estate, and Plaintiff's post-trial motion for attorney fees.

4

a statement of undisputed facts. Paragraph 7 of the statement alleged the debt was nondischargeable. Debtor filed no response to the statement.

The Court held a hearing on the motion for summary judgment on May 12, 2009. For the following reasons, the Court will grant the motion in part and deny the motion in part.

### Conclusions of Law

<u>Summary Judgment</u>

Summary judgment is governed by Federal Rule of Civil Procedure 56, made applicable to adversary proceedings through Federal Rule of Bankruptcy Procedure 7056. Under Rule 56, a party is entitled to summary judgment when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>McCaleb v. A.O. Smith Corp.</u>, 200 F.3d 747, 750 (11th Cir. 2000). The Court views all evidence and reasonable factual inferences in the light most favorable to the nonmoving party. <u>Burton v. Tampa Housing Auth.</u>, 271 F.3d 1274, 1277 (11th Cir. 2001).

Pursuant to Local Rule 7056-1(a), the party seeking summary judgment must submit a "statement of the uncontested facts as to which the movant contends there is no genuine issue to be tried[.]" Likewise, if the respondent contests any of the facts, it must file a "statement of the material facts as to which it is contended that there exists a genuine issue to be tried[.]" L.R. 7056-1(b). If the respondent fails to file a response, all the facts in the movant's statement "may be deemed admitted[.]" L.R. 7056-1(c).

In this case, Plaintiff argues she is entitled to summary judgment on two grounds: (1) admissions by Debtor in her answer and response to the summary judgment motion and (2) collateral estoppel based on the state court judgment of tortious interference with a bequest.

### Admissions

Plaintiff argues that Debtor twice admitted the debt at issue in this case is nondischargeable. First, Debtor admitted to paragraph 12 of the complaint, which alleged the debt was nondischargeable. Second, Debtor failed to dispute paragraph 7 of Plaintiff's statement of uncontested facts, accompanying the motion for summary judgment, which also asserted the debt is nondischargeable. Consequently, Plaintiff contends, the "fact" of nondischargeability should be deemed admitted pursuant to Local Rule 7056-1(c). However, the nondischargeability of a debt is a legal conclusion that cannot be admitted as a fact. See Dabertin v. HCR Manor Care, Inc., 68 F. Supp. 998, 1000 (N.D. Ill. 1999) ("It is well established that judicial admissions on questions of law have no legal effect."); accord In re Mayo, No. 04-11106, Adv. No. 04-1067, 20007 WL 2713064, at *2 (Bankr. D. Vt. Sept., 17, 2007) ("where statements in the Complaint involve legal conclusions, those items cannot be admitted as true"). Therefore, the Court finds the ostensible admissions by Debtor do not effectively cede the issue of nondischargeability, and the Court will deny summary judgment based on admissions.

### Collateral Estoppel

Plaintiff's second basis for summary judgment is that nondischargeability can be established under principles of collateral estoppel. Collateral estoppel prevents relitigation of issues decided in prior proceedings. Allen v. McCurry, 449 U.S. 90, 95, 101 S.Ct. 411, 415 (1980). It "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial

resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." Id. (citations omitted). It is well-established that collateral estoppel applies in nondischargeability proceedings. Grogan v. Garner, 498 U.S. 279, 285 n.11, 111 S. Ct. 654, 658 n.11 (1991). In the case of a prior state court judgment, the Court must apply the collateral estoppel law of the state where the judgment was rendered. St. Laurent v. Ambrose (In re St. Laurent), 991 F.2d 672, 675-76 (11th Cir. 1993).

In this case, the prior judgment at issue was rendered in West Virginia state court. The West Virginia Supreme Court has set forth a four-part test to determine whether collateral estoppel will prevent relitigation of an issue:

> (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

State v. Miller, 459 S.E.2d 114, 120 (W.Va.1995). Plaintiff bears the burden of proving each element of collateral estoppel. Dixie Nat'l Life Ins. Co. v. McWhorter (In re McWhorter), 887 F.2d 1564, 1566 (11th Cir. 1989).

In this case, three of the elements of collateral estoppel are undisputed. A final judgment on the merits was entered by a West Virginia court. Plaintiff and Defendant-Debtor in this adversary proceeding were, respectively, the plaintiff and defendant in the state court case. The judgment was entered after a trial by jury, in which Debtor had a full opportunity to litigate. Thus, the only question is whether the state court action and this adversary proceeding share an identity of issues. The relevant issues in this case are fiduciary fraud under § 523(a)(4) and

willful and malicious injury under § 523(a)(6).

To prove identity of issues, "both the legal issues presented and the controlling facts must be identical in each action[.]" Holloman v. Nationwide Mut. Ins. Co., 617 S.E.2d 816, 823 (W. Va. 2005). Furthermore, the legal standard applied in both proceedings must be similar. Miller, 459 S.E. 2d at 121. For example, in Neiswonger v. Hennessey, the West Virginia Supreme Court found issues were not identical for purposes of collateral estoppel when the legal standard in one case required proof of both the nature of the defendant's conduct and an inquiry into his state of mind, but the prior proceeding required only proof as to the conduct. 601 S.E.2d 69, 73 (W. Va. 2004). In addition, to prevail based on collateral estoppel, Plaintiff must demonstrate that one of the legal issues she raises–fiduciary fraud or willful and malicious injury–was "essential to the judgment" in the West Virginia proceeding. Miller, 459 S.E.2d at 120. "To sustain this burden a party must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action. Any reasonable doubt as to what was decided by a prior judgment should be resolved against using it as an estoppel." Hon. Barry Russell, Bankruptcy Evid. Manual, § 3:1 (2008-09 ed.) (citations omitted).

*Fiduciary fraud.* Section 523(a)(4) provides for nondischargeability of a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny[.]" 11 U.S.C. § 523(a)(4). In this case, Plaintiff's claim is limited to fiduciary fraud or defalcation. To prevail on a fiduciary fraud or defalcation claim, the plaintiff must prove the existence of a technical trust that is created voluntarily by contract or created by a statute that imposes fiduciary obligations. Quaif v. Johnson, 4 F.3d 950, 953-54 (11th Cir. 1993). The trust must exist prior to the conduct giving rise to the debt. Guerra v. Fernandez-Rocha (In re Fernandez-Rocha), 451

F.3d 813, 816 (11th Cir. 2006). Consequently, involuntary trusts, such as constructive and resulting trusts do not satisfy § 523(a)(4). Id.; Quaif, 4 F.3d at 953. Although Plaintiff's state court complaint alleged a confidential relationship between Debtor and the testator, she has not shown or even alleged the existence of a technical trust between Debtor and herself that pre-dated the conduct constituting tortious interference. Furthermore, she has produced no record showing such a fiduciary relationship was at issue in the state court case. Because the issue of a technical trust was not litigated and decided in the state proceedings, collateral estoppel does not apply, and the Court will deny Plaintiff's motion for summary judgment as to the § 523(a)(4) claim.

*Willful and malicious injury.* Pursuant to § 523(a)(6), a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is excepted from discharge. An injury is willful when the injury itself was intended or substantially certain to result. Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S. Ct. 974, 977 (1998); Hope v. Walker, 48 F.3d 1161, 1165 (11th Cir. 1995). It is malicious when it is "wrongful and without just cause or excessive even in the absence of personal hatred, spite, or ill will." Walker, 48 F.3d at 1164.

A jury in West Virginia found Debtor liable for tortious interference with a bequest. The question is whether in reaching that decision the jury necessarily determined that Debtor intended to injure Plaintiff and did so wrongfully. Plaintiff has produced no record as to the legal standard applied to the tortious interference claim or as to the evidence actually before the jury–no jury instructions, no verdict form, and no other documents that might show the basis for the jury's decision. Furthermore, the Court could locate no cases setting forth the elements necessary to prove tortious interference with a bequest. See Barone v. Barone, 294 S.E.2d 260 (W. Va. 1982)

(recognizing tortious interference with a bequest as a cause of action, but offering no guidance for proving such a claim).  In this case, willfulness and maliciousness may very well be necessary components of a claim for tortious interference claim.  However the Court cannot simply make assumptions about the legal standard for purposes of the "identity of issues" element of the collateral estoppel analysis.  The Court needs some sort of proof on which to base such a finding.

Plaintiff has submitted an order on post-trial motions, in which the trial judge described Debtor's conduct as "outrageous."  He further said, "as exemplified by the jury's verdict [Debtor's behavior] constitutes bad faith and vexatious conduct."  However, nowhere in the order does the judge indicate such findings were necessary to prove the cause of action.  The judge is merely characterizing the jury's verdict for purposes of deciding whether to award attorney fees.  Consequently, the judge's statements are insufficient to prove identity of issues based on tortious interference with a bequest.

In some situations, the award of punitive damages might be sufficient to show that the injury giving rise to the judgment was willful and malicious.  For example, the standard for awarding punitive damages may specifically require a finding equivalent to willful and malicious injury.  Alternatively, the fact finder may state that its award of punitive damages is based on findings of willfulness and malice.   In this case, the state court jury awarded punitive damages to Plaintiff, but Plaintiff offered nothing from the trial court record to demonstrate the jury's basis for making that award. Under West Virginia law, "'[i]n actions of tort, where gross fraud, malice, oppression, or wanton, willful, <u>or reckless conduct</u> or criminal indifference to civil obligations affecting the rights of others appear, or where legislative enactment authorizes it, the jury may assess exemplary, punitive, or vindictive damages; these terms being synonymous.'"

Peters v. Rivers Edge Mining, Inc., No. 34272, 2009 WL 1543913 (W. Va. June 4, 2009) (quoting Mayer v. Frobe, 22 S.E. 58 (W. Va. 1895)) (emphasis added).  Thus, it is possible for a jury to award punitive damages in the absence of a willful and malicious injury.

In Duncan v. Duncan (In re Duncan), 448 F.3d 725 (4th Cir. 2006), the court considered whether collateral estoppel applied in a § 523(a)(6) adversary proceeding when a state court had previously entered a judgment against the debtor for wrongful death, including an award of punitive damages.  In that case, the jury instructions authorized punitive damages if "the Defendant's conduct was willful, ... or was so reckless as to evince a conscious disregard for the safety of [the decedent.]"  Id. at 729.  In declining to grant summary judgment to the plaintiff on collateral estoppel grounds, the court said, "We cannot say that the punitive damages award necessarily involved a finding identical to the § 523(a)(6) inquiry since the jury could have based its award on a finding of recklessness."  Id.  Thus, the plaintiff had failed to prove the requisite identity of issues.  Id.; see also Miller v. Held (In re Held), 734 F.2d 628, 629-30 (11th Cir. 1984) (holding that the award of punitive damages in a conversion action did not satisfy the identity of issues requirement for collateral estoppel in a § 523(a)(6) case because the punitive damages could have been awarded based on reckless indifference).  This case is similar to Duncan and Held because the law in West Virginia provides for punitive damages based on recklessness.  Although the jury here awarded punitive damages in the tort case, the Court has no evidence that the award was based on Debtor's willfulness and malice rather than her recklessness.  Therefore, the award of punitive damages does not prove identity of issues for purposes of collateral estoppel.

***Attorney fees.***  While Plaintiff has failed to establish all the elements of collateral

estoppel based on the judgment of tortious interference with a bequest, the attorney fees are a separate matter. In West Virginia, they are subject to an independent legal standard. The court may award attorney fees to a prevailing party if the losing party "'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Yost v. Fuscaldo, 408 S.E.2d 72, 78 (W.Va.,1991) (quoting Nelson v. Public Employees Ins. Bd., 300 S.E.2d 86, 92 (W. Va. 1982)). The rule is concerned with conduct leading to or in connection with the legal proceedings. Id. at 79. It serves as a means to discourage "[p]arties whose interest in the legal process is to oppress or cheat others[.]" Id. In other words, it applies to a party who intends to cause harm through the wrongful use of the legal process. As such, it requires a finding equivalent to willful and malicious injury. In this case, after a hearing on the question of attorney fees, the trial court made specific findings that "Defendant, Edith Stalnaker's conduct in this matter was in bad faith, willful, wanton, and vexatious[.]" Based on this standard, the Court is persuaded that the trial court was required to find and did find that Debtor willfully and maliciously injured Plaintiff during the course of the state court proceedings. Therefore, the attorney fees are a debt arising from willful and malicious injury, and Plaintiff is entitled to summary judgment based on collateral estoppel as to the attorney fees only.

## Conclusion

Plaintiff in this case filed a motion for summary judgment based on certain admissions made by Debtor that the debt at issue is nondischargeable and based on the collateral estoppel effect of a West Virginia judgment for tortious interference with a bequest. The Court finds the "admissions" cited by Plaintiff relate to conclusions of law rather than facts. Because a Debtor cannot properly admit to conclusions of law, the Court will not grant summary judgment based

on admissions. With respect to collateral estoppel, Plaintiff failed to submit a record from the state court indicating that issues decided by the jury were equivalent to either fiduciary fraud or willful and malicious injury. Because Plaintiff failed to prove identity of issues, the Court will deny collateral estoppel as the portion of Plaintiff's claim comprised of compensatory and punitive damages. However, as to attorney fees granted by the West Virginia trial judge, Plaintiff provided a sufficient record to demonstrate findings equivalent to willful and malicious injury were necessary to an award of attorney fees, and the judge expressly made such findings. Therefore, the Court will grant summary judgment based on collateral estoppel on the ground that the attorney fees are a debt arising from willful and malicious injury. Consequently, the attorney fees are nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

     An Order in accordance with this Opinion will be entered on this date.

END OF DOCUMENT