

**SO ORDERED.**

**SIGNED this 14 day of December, 2010.**

_____
**JAMES D. WALKER, JR.
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | CASE NO. 08-52156-JDW |
| EDITH E. STALNAKER, | ) | |
| | ) | |
| DEBTOR. | ) | |
| | ) | |
| WILDA E. KARL, | ) | ADVERSARY PROCEEDING |
| | ) | NO. 08-5092-JDW |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| EDITH E. STALNAKER, | ) | |
| | ) | |
| DEFENDANT. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

<u>COUNSEL</u>

| | |
|---|---|
| For Plaintiff: | John R. B. Long |
| | 237 Davis Road |
| | Augusta, Georgia 30907 |
| | |
| For Debtor-Defendant: | Renate Downs Moody |
| | 152 New Street, Suite 109-112 |
| | Macon, Georgia 31201 |

**MEMORANDUM OPINION**

This matter comes before the Court on Plaintiff's complaint to determine dischargeability of a debt. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(I). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

**Findings of Fact**

Plaintiff Wilda Karl and Defendant-Debtor Edith Stalnaker are sisters. After their father died in late 2002, Plaintiff sued Debtor in West Virginia state court for tortious interference with a bequest. Plaintiff contended that Debtor induced their father to cut Plaintiff out of his will. On August 30, 2006, the Circuit Court of Jackson County, West Virginia, entered a final order in Plaintiff's favor, awarding her compensatory damages of $14,233.33, punitive damages of $10,000, and attorney fees of $21,836.41, plus interest at a rate of 10%. Debtor's liability on the judgment was partially satisfied in 2007, when Plaintiff received Debtor's portion of their father's estate, in amounts totaling $8,702.47.

Debtor filed a Chapter 7 petition on August 8, 2008. Shortly thereafter, Plaintiff filed a complaint to determine the dischargeability of the debt arising from the state court judgment. The Court entered an order granting summary judgment to Plaintiff as to the portion of the judgment consisting of attorney fees. On December 1, 2010, the Court held a trial to consider the dischargeability of the compensatory and punitive damages. During the trial, Plaintiff withdrew her claims as to the compensatory and punitive damages. The only remaining question is the

amount of Plaintiff's nondischargeable claim–specifically, to what extent, if any, it was reduced by Plaintiff's receipt of $8,702.47, representing Debtor's share of the probate estate.

The parties offered no evidence that either Debtor or Plaintiff specified an allocation for the money. The West Virginia court appointed Kennad Skeen as the executor of the parties' father's estate. Plaintiff testified that she received two checks for $8,000 from Mr. Skeen in August 2007, representing her share of the estate and Debtor's share. In December 2007, she received two checks for approximately $700, representing her share and Debtor's share of the final estate distribution. She presented as evidence copies of two checks–one for $8,000 and one for $702.48–which she said were the checks representing Debtor's portion of the estate. She said she did not make copies of the checks for her portion of the estate. Both checks were made payable to Plaintiff. Nothing on either check indicated it represented Debtor's share of the estate.

Plaintiff's testimony was contradicted by the records of Mr. Skeen–a disinterested fiduciary. Mr. Skeen submitted an accounting of distributions to the state court. According to the accounting, the estate was divided evenly among six heirs–including Debtor and Plaintiff. On August 8, 2007, Mr. Skeen disbursed $8,000 to each heir, except Debtor. He held back Debtor's share pending further order of the state court. On November 27, 2007, Mr. Skeen disbursed an additional $702.48 to each heir, except Debtor. At that time, he also disbursed amounts of $8,000 and $702.47, representing Debtor's share, to Tim Lafon for Plaintiff. Mr. Lafon served as Plaintiff's attorney in the state court case. This is supported by a letter Mr. Skeen wrote to Plaintiff and Mr. Lafon, dated December 3, 2007, and addressed to Mr. Lafon's business address. In the letter, Mr. Skeen stated he had enclosed a check for $8,702.47, representing Debtor's share of the estate. Based on the executor's accounting and the letter, the

Court is persuaded Debtor's share of the estate was delivered to Plaintiff's attorney, not to Plaintiff.

In an affidavit dated August 22, 2006, Mr. Lafon stated Plaintiff had incurred attorney fees of $21,836.20 during the state court litigation and had paid $17,540.93, leaving a balance due of $3,878.25. There is no evidence that Plaintiff paid the balance due, nor is there any evidence about what became of the $8,702.47 mailed to Mr. Lafon.

### Conclusions of Law

At issue in this case is the amount of nondischargeable attorney fees owed to Plaintiff by Debtor. The West Virginia trial court ordered Debtor to pay Plaintiff damages totaling $24,233.33 and fees of $21,836.41, to accrue interest at a rate of 10 percent. Debtor's share of the probate estate, $8,702.47, was paid to Plaintiff in partial satisfaction of the judgment. The Court must determine how much, if any, of the $8,702.47 should be applied to the liability for attorney fees. Because the payment was made prior to the bankruptcy filing, West Virginia law governs allocation of the payment.

Although no West Virginia statutes are directly on point, the courts have provided some guidance–though not recently. As a starting point, "the debtor, at the time he makes payments upon his indebtedness, has the absolute right to direct to which of his debts the payments shall be applied by the creditor." J. & G. Constr. Co. v. Freeport Coal Co., 129 S.E. 2d 834, 836-37 (W. Va. 1963). If the debtor fails to do so, "the creditor to whom the payments are made may apply such payments as he may choose to apply them." Id. at 837.

In this case, neither Debtor nor Plaintiff specified any application of the payment. In such circumstances, "the court will apply [the payment] according to the principles of justice and

equity in the particular case." Id. at 837. See also 60 Am. Jur. Payment § 77 (2010) ("In the absence of an election by either party, a court may make such application of a payment to accrued indebtedness as equity and justice require .... [I]n applying a payment, the court should consider all the circumstances of the case ...."); accord Wines v. Wines (In re Wines), 997 F.2d 852 (11th Cir. 1993) ("if a creditor fails to designate within a reasonable time how payment is to be applied, the court may allocate the payment in an equitable manner.").

The West Virginia courts have offered a number guidelines to assist judges in making an equitable and just allocation of payments. For example, priority should be given to less secure debts, older debts, and debts barred by a statute of limitations. J. &. G. Constr., 129 S.E.2d at 837. In this case, all the components of the judgment are of equal security, equal age, and are not barred by the statute of limitations. Thus, none of the West Virginia guidelines are helpful here.

Nevertheless, a general common law rule, known as the United States rule, provides that in the absence of any direction by the parties, payment on a debt shall first apply to accrued interest and then to principal. In re Cherokee Cnty., Kansas Health Care Facility Revenue Bonds, 946 P.2d 83, 93 (Kan. 1997). See also Valley County Sch. Dist. 88-0005 v. Ericson State Bank, 790 N.W.2d 462, 468 (Neb. App. 2010); Chicago Truck Drivers v. El Paso CGP Co., 525 F.3d 591, 604 (7th Cir. 2008); Threatt v. Forsyth Cnty., 585 S.E.2d 159, 163 (Ga. App. 2003); W. Va. Code § 11-11-15(b) (1985), regarding application of payments on delinquent estate taxes, ("Every payment of delinquent tax shall be applied, first, to any interest due on that tax, secondly to any additions to tax or penalty imposed ..., and then, if there is any balance, to the tax itself.")

In this case, the trial court ordered interest as follows:

> [T]he Plaintiff, Wilda E. Karl shall have a judgment against the

> Defendant, Edith Stalnaker, individually, in the sum of $24,233.33.
> Post judgment interest shall accrue on this amount at the rate of
> 10% from November 9, 2005 until paid. Prejudgment interest at
> the rate of 10% per annum shall accrue on the above damages,
> which represent specific monetary damages which [are] $11,733.33
> from November 24, 2002, the date of Basil Gandee's death until
> paid.
> ...
> The Court ... does award Plaintiff attorney fees and costs ... as an
> additional judgment against the Defendant ... in the amount of
> $21,836.31. ... This judgment shall accrue post judgment interest at
> the rate of 10% from November 9, 2005, until paid.

Exhibit 4, Final Judgment Order of the Circuit Court of Jackson County, West Virginia, at 2-3 (August 30, 2006). Applying the United States rule, the $8,702.47 payment shall first be allocated to any prejudgment and post judgment interest that had accrued through the date of payment, December 3, 2007.

With regard to any remaining amounts, the Court concludes they should be allocated to attorney fees before compensatory and punitive damages. Absent some agreement to the contrary, lawyers are not expected to bear the risk of loss when they render services. Traditionally, this fact has led to the application of any recovery to the payment of attorney fees ahead of the client's share of the compensation. Although not stated in the law of West Virginia or Georgia, this practice of favoring payment of attorney fees serves to encourage attorneys to provide legal counsel to persons not otherwise possessed of the means to assure payment for such services. Any other rule would discourage a system of meaningful recompense for injury.

## Conclusion

Plaintiff received a state court judgment against Debtor consisting of $24,233.33 in damages and $21,836.31 in attorney fees. Prior to filing for bankruptcy, Debtor paid $8,702.47

toward the judgment. On summary judgment, this Court ruled the attorney fee portion of the judgment is nondischargeable. After a trial, during which Plaintiff abandoned its other claims of nondischargeability, the Court has concluded Debtor's partial payment on the judgment shall be applied first to any interest that had accrued through the date of payment, then to attorney fees, then to compensatory damages, then to punitive damages.[1] Therefore, the amount of Plaintiff's nondischargeable claim shall be reduced to the extent the partial payment of $8,702.47 exceeds interest that accrued through December 3, 2007.

An Order in accordance with this Opinion will be entered on this date.

END OF DOCUMENT

---

[1] Because the payment at issue in this case is insufficient to pay attorney fees in full, the preference stated here for payment of actual damages before punitive damages, while not necessary to the resolution of the case, is necessary to explain the "principles of justice and equity" informing this decision.